UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,<br><br>       **Plaintiff,**<br><br>       v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE, et al.,<br><br>       **Defendants.** | )<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 09-411 (ESH)**<br>)  **REDACTED**<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff John Doe seeks money damages and injunctive and declaratory relief for the alleged improper disclosure of his private medical records under the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, Rehabilitation Act, 29 U.S.C. § 794, and Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). Defendants include the Department of Justice ("DOJ") and the Merit System Protection Board ("MSPB"), as well as Eric H. Holder, Jr., in his official capacity as the Attorney General of the United States. Defendants now move to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion to dismiss, or in the alternative, for summary judgment will be granted as to all but plaintiff's Rehabilitation Act claim, which will be dismissed without prejudice.

## BACKGROUND

### I. DOE'S EMPLOYMENT AT THE USAO

Plaintiff worked for the DOJ as an Assistant United States Attorney ("AUSA").  (Second Am. Compl. ("Compl.") [Dkt. 23] ¶ 3.)  His troubles within his local United States Attorney's Office ("USAO") appear to have begun in 2003, when he became embroiled in a dispute with a law enforcement agent over an allegedly illegal search and seizure.  (*Id.* ¶ 7.)  Though the U.S. Attorney for Doe's district approved the search, Doe submitted a memorandum (the "2003 Memo") to his superiors detailing his objections.  (*Id.* ¶ 8-9.)  A series of conflicts between Doe and his superiors ensued.  (*Id.* ¶¶ 10-11.)  In late 2003, Doe took a medical leave of absence and was diagnosed with an anxiety disorder by his psychologist.  (*Id.* ¶ 12.)  He returned to work in early 2004.  (*Id.*)  In October 2006, Doe submitted a form to DOJ requesting a reasonable accommodation for his anxiety disorder.  (*Id.* ¶ 14a.)  DOJ granted the request in part in December 2006.  (*Id.* ¶ 15a.)

Doe alleges he again became the target of the local U.S. Attorney between March and June of 2008, both because of a lawsuit alleging misconduct by the agent who was the subject of the 2003 Memo and because Doe prepared and distributed a new memorandum urging the investigation of certain bank records.  (Compl. ¶¶ 16-16f.)  In August 2008, management informed Doe he would be transferred to the "Gun Unit, a significant demotion."  (*Id.* ¶ 17b.)  During an August 6, 2008 meeting to discuss the transfer, Doe's direct supervisor criticized him for writing the 2003 Memo and the new memo and said that the USAO was "embarrassed."  (*Id.* ¶ 17c.)  On August 11, 2008 Doe submitted a new request for a reasonable accommodation and included a note from his psychologist explaining that the demotion would "exacerbate" his anxiety disorder.  (*Id.* ¶ 18.)

Doe alleges that, after receiving his request, the management of his office informed Jeff Rosenblum, an attorney in the General Counsel office of the Executive Office of the United States Attorney ("EOUSA") in Washington, D.C. that Doe was being transferred "for his health." (Compl. ¶ 18a; Pl.'s Counterstatement of Material Facts in Dispute ("Pl.'s Counterstatement") [Dkt. 45] ¶ 2b.) On the same day, the office requested "further medical documentation" from Doe. (Compl. ¶ 19.) Doe submitted the supplementary medical information, including a letter from his psychologist, on September 5, 2008. (*Id.* ¶ 20.) Alarmed by the letter, the office's Accommodation Coordinator informed the temporary acting U.S. Attorney of its contents.[1] (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n") [Dkt. 45], Ex. 20 at 46-47.) According to the Coordinator's deposition, the Coordinator then contacted the U.S. Attorney. (*Id.* at 47.) Finally, the Coordinator contacted Rosenblum (*id.* at 48-49.), who represented DOJ against John Doe in unrelated disciplinary and EEO proceedings at the time. (*Id.* at 61-62.) Contrary to the Coordinator's deposition, Doe's complaint alleges that the Coordinator only disclosed the information to an unnamed acting U.S. Attorney and to other AUSAs in the office. (Compl. ¶ 21.) It suggests that these persons then "re-disclosed" the information to persons in the Executive Office for United States Attorneys ("EOUSA") and the Personnel Security Section of that office. (*Id.*)

On September 9, 2008, the Coordinator, the U.S. Attorney, the Criminal Chief for the local USAO (Pl.'s Opp'n, Ex. 19 at 3-4), staff from the General Counsel office, and Personnel Security staff held a conference call to discuss Doe's status. (*Id.* at 63-65; Compl. ¶ 24.) DOJ subsequently revoked Doe's security clearance. (Compl. ¶ 21c.) On September 11, 2008, Doe

---

[1] Specifically, the Accommodation Coordinator informed the temporary acting U.S. Attorney that Doe's psychologist had said he ███████████████████████ as a result of the proposed move. (Pl.'s Opp'n, Ex. 20 at 46-47.)

was publicly escorted out of his office.  On October 10, 2008, Doe received a "Notice of

Proposed Removal Letter" letter from the U.S. Attorney (referred to as the "Acting United States

Attorney" in Doe's complaint (*id.* ¶ 25)), informing him he had been terminated.  (Pl.'s Opp'n,

Ex. 12.)  On November 4, 2008, Doe submitted a follow-up letter from his psychologist asserting

that he was not a security threat ███████████████████████████████ (*Id.*, Ex.

14.)  The Executive Director for the EOUSA responded with a "final decision" letter removing

Doe, in which he quoted the psychologist's original and follow-up letters.[2]  (Compl. ¶ 26; Pl.'s

Opp'n, Ex. 15.)

## II.  POST-TERMINATION LITIGATION

On February 11, 2009, Doe appealed his removal to the MSPB, requested his case be

placed under seal, and asked to proceed under a pseudonym.  (Compl. ¶ 27a.)  The

Administrative Law Judge ("ALJ") for the MSPB denied these requests, as well as his request to

certify these decisions to the full Board.  (*Id.* ¶¶ 27a-b.)  Portions of Doe's personnel and medical

records were subsequently disclosed as part of the MSPB's published decision.  (*Id.* ¶ 27b.)  Doe

then filed a motion requesting an Emergency Temporary Restraining Order ("TRO") (Dkt. 8) to

bar the MSPB from placing his records in the public domain and to bar the disclosure of his

records to his state Unemployment Commission.  The Court stopped the Board from placing

Doe's records in the public domain pending Doe's request to the Chairman of the MSPB to

remove his private records from its public decision.  (Dkt. 17.)  However, the Court refused to

block the disclosure of Doe's information to the state Commission.  (*Id.*)  The MSPB Chairman

then decided to allow Doe to proceed under a pseudonym.  (Pl.'s Counterstatement ¶ 16.)

---

[2] The letter quotes the psychologist's relevant statement: ███████████████████

████████████████████████████████████████

(Pl.'s Opp'n, Ex. 15 at 1.)

Doe also requested and was granted unemployment compensation from the Unemployment Commission of his home state. (Compl. ¶ 27e.) USAO then disclosed the "Notice of Proposed Removal Letter" and the "final decision" letter to a third-party contractor, Talkx,[3] which appealed the award on DOJ's behalf, submitting the documents as support for its position. (*Id.* ¶ 27e; Defs.' Statement of Material Facts ¶ 11 [Dkt. 39].) "Within hours" of receiving Doe's response, the Commission denied DOJ's appeal. (Pl.'s Counterstatement ¶ 11g; Pl.'s Opp'n, Ex. 18.) Plaintiff alleges that the protected materials released by DOJ "now are in the public record." (Compl. ¶ 27e.)

## III. PROCEDURAL HISTORY

Plaintiff brought suit in this jurisdiction on March 3, 2009, after being granted his request to file under a pseudonym. (Dkt. 1-3.) On April 10, 2009, plaintiff simultaneously filed an amended complaint and sought a TRO to prevent the MSPB from making his medical and personnel records public. (Dkt. 7-8.) This Court granted plaintiff's motion in part, barring the MSPB from placing plaintiff's records in the public domain. (Dkt. 17.) On May 20, plaintiff filed a motion asserting that his medical and personnel information was still available to the public and asked the Court to order the MSPB to show cause why it should not be held in contempt for violating the TRO. (Dkt. 24.) The Court issued the "show cause" order, to which defendants responded on May 28. (Dkt. 26.)

Plaintiff filed a second amended complaint on May 19, 2009 (Dkt. 23), seeking damages, preliminary and permanent injunctive relief, declaratory relief, costs, and attorneys fees.

---

[3] The precise name of this contractor is somewhat unclear. Plaintiff refers to it in his complaint as "TALX." (Compl. ¶ 27e.) Plaintiff's and defendants' statements of facts refer to it as "Talkx USA." (Pl.'s Counterstatement ¶ 11b; Defs.' Statement of Material Facts ¶ 11.) Although the actual contractor appears to be named TALX, *see* HR, Payroll and Tax Management Solutions, http://www.talx.com/index.asp (last visited Sept. 16, 2009), to avoid confusion, the Court will refer to the contractor as "Talkx."

Plaintiff also asks the Court to compel DOJ to reinstate him with back pay and benefits and to reasonably accommodate his disability.  (Compl. at 22-23 ¶¶ (a)-(h) (prayer for relief).)  Plaintiff alleges that the DOJ violated the Privacy Act by failing to properly collect information and maintain and operate its system of records.  (*Id.* ¶¶ 38-41.)  He also alleges DOJ wrongfully disclosed his medical and personnel records to USAO officers, EOUSA officers, security personnel, the state Unemployment Commission, and a third-party contractor.  (*Id.* ¶¶ 31, 49.) He alleges that the MSPB and DOJ also violated the Privacy Act by disclosing his records to the public.  (*Id.* ¶ 53.)  Finally, plaintiff alleges that DOJ violated the Rehabilitation Act by both illegally discriminating against him and failing to act on his reasonable accommodation request by engaging in an "Interactive Process," and that it violated the APA by failing to engage in the reasonable accommodation process.  (*Id.* ¶¶ 58-59.)

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  Plaintiff opposes dismissal and summary judgment and has filed a Rule 56(f) affidavit requesting further discovery.

## ANALYSIS

### I. LEGAL STANDARD

Defendants have moved to dismiss the plaintiff's claims, Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment. Fed. R. Civ. P. 56.  "Having considered supplemental documents and declarations from both parties, the Court must analyze defendants' motion as one for summary judgment." *Cacho v. Chertoff*, No. 06-00292, 2006 WL 3422548, at *3 (D.D.C. Nov. 28, 2006) (citing *Harris v. Attorney Gen'l*, 400 F. Supp. 2d 24, 26 (D.D.C. 2005)).  "Both parties were given a reasonable opportunity to submit materials outside the pleadings," *Harris*,

400 F. Supp. 2d at 26, as the array of depositions and relevant documents submitted to the Court demonstrates. "Further, an opportunity was afforded to each party to respond to the other's submissions." *Id.*

A court must grant a motion for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must "regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor." *Harris*, 400 F. Supp. 2d at 26 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Furthermore, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

## II.  PRIVACY ACT CLAIMS AGAINST DOJ

When it passed the Privacy Act, Congress declared that "in order to protect the privacy of individuals identified in information systems maintained by federal agencies, it is necessary and proper for the Congress to regulate the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896. The Act provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." *Doe v. Chao*, 540 U.S. 614, 618 (2004). These detailed instructions and provisions for relief "protect[] individuals from injury that can result from the bureaucratic habit of collecting and retaining information, however dated, prejudicial, or false." *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 38 (D.C. Cir. 1987). "Put simply, the Act

'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to . . . ensur[e] that his records are accurate and properly used.'" *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006) (quoting *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984)).

Section (g) of the Act creates causes of action for four categories of agency misconduct. 5 U.S.C. § 552a(g)(1). The first two categories "cover deficient management of records," by providing for the "correction of any inaccurate or otherwise improper material in a record" and for "a right of access against any agency refusing to allow an individual to inspect a record kept on him." *Doe v. Chao*, 540 U.S. at 618 (citing 5 U.S.C. §§ 552a(g)(1)(A)-(B)). The third category covers "an agency's failure to maintain an adequate record on an individual" that results in a "determination 'adverse'" to that person." *Id.* (citing 5 U.S.C. § 552a(g)(1)(C)). The fourth category covers any "adverse effect" from a "failure [by the agency] to hew to the terms of the Act." *Id.* (citing 5 U.S.C. § 552a(g)(1)(D)). In actions brought under (g)(1)(C) and (D), the government will only be liable for "actual damages sustained by the individual as a result of the refusal or failure." 5 U.S.C. § 552a(g)(4).

Plaintiff's claims center around the alleged failure of the agency to hew to § 552a(b) of the Act, which forbids disclosure of "any record which is contained in a system of records by any means of communication to any person, or to another agency, except . . . with the prior written consent of[] the individual to whom the record pertains." 5 U.S.C. § 552a(b). Count I alleges that the DOJ wrongfully disclosed confidential personnel records to USAO officers, EOUSA officers, and security personnel. (Compl. ¶ 31.) Count III alleges that the DOJ wrongfully disclosed plaintiff's information to the Unemployment Commission. (*Id.* ¶ 49.) Count IV

alleges that the MSPB and DOJ violated subsection (b) when the MSPB publicly disclosed plaintiff's medical records as part of its published decision.  (*Id.* ¶ 53.)

Plaintiff also seeks damages under (g)(1)(D) for DOJ's violations of subsection (e) of the Privacy Act, which lists "agency requirements" and generally "impos[es] responsibilities on federal agencies to maintain their records accurately."  *Bartel*, 725 F.2d at 1407 & n.6.  In Count II of his complaint, plaintiff alleges (1) DOJ failed to inform him of the principal purpose for which it intended to use his medical information, in violation of subsection (e)(3) (Compl. ¶ 38); (2) DOJ failed to assure the accuracy, completeness, timeliness or relevance of its "allegations about Plaintiff" prior to their disclosure, in violation of subsections (e)(5) and (e)(6) (*Id.* ¶ 39); (3) DOJ failed to establish rules of conduct for persons involved in the operation and maintenance of its system of records, in violation of subsection (e)(9) (*Id.* ¶ 40); and (4) DOJ failed to establish safeguards to protect the security and confidentiality of plaintiff's records in violation of subsection (e)(10) (*Id.* ¶ 41).

The Privacy Act's focus on the proper "collection, maintenance, use, and dissemination" of personal information, *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 40 (D.D.C. 2008), necessarily limits its scope.  For example, "[i]t is well-established that, 'generally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments.'"  *Mueller v. Winter*, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (quoting *McCready*, 465 F.3d at 7).  The Circuit has also stated that a "collateral attack on [an] original personnel decision" is an "impermissible" use of the Privacy Act.  *Kleiman v. Dep't of Energy*, 956 F.2d 335, 339 (D.C. Cir. 1992).  By extension, "it bears mention that any harm plaintiff suffered from the administrative actions taken against him is not actionable under the Privacy Act."  *Cacho*, 2006 WL 3422548, at *3 (citing *Albright v. United States*, 732 F.2d 181, 190 (D.C. Cir. 1984) ("[T]he Privacy Act was not

intended to shield these employees from the vicissitudes of federal personnel management decisions.")). *See also Hanna v. Herman*, 121 F. Supp. 2d 113, 124 (D.D.C. 2000) ("[P]laintiff cannot rely on any arguable violation of the Privacy Act to collaterally attack the agency's decision to demote him."), *aff'd mem. sub nom. Hanna v. Chao*, No. 00-5433, 2001 WL 476397 (D.C. Cir. Apr. 11, 2001). Thus, plaintiff's arguments that defendants lacked a basis to terminate him because his job did not require a security clearance or because they failed to follow the correct procedures (Pl.'s Opp'n at 6-7); that DOJ should have engaged in an interactive process regarding his reasonable accommodation request (*id.* at 9-10), or that DOJ gave too much weight to his psychologist's first letter (*id.* at 15-19) are impermissible attacks on DOJ's personnel decisions and administrative actions. Therefore, they are not properly before this Court under the guise of a Privacy Act case. Rather, these are matters within the province of the MSPB and cannot be litigated here. The Court will thus restrict its inquiry to DOJ's record-keeping practices and to the alleged disclosure of plaintiff's medical and personnel records.

### A. Failure to Keep Accurate Records – Subsections (e)(5) and (e)(6)

Count II alleges that DOJ violated subsections (e)(5) and (e)(6) of the Privacy Act by failing to keep accurate records. (Compl. ¶ 39.) As the D.C. Circuit recently explained, a plaintiff must establish four elements to recover under this section:

> (1) he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records.

*Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1006 (D.C. Cir. 2009) (quoting *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996)). *See also Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005) (plaintiff must "show not only that the inaccurate records were

considered in making the determination, but that an error in the records *caused* the determination."), *aff'd mem.* 210 F. App'x 5 (D.C. Cir. 2006). Here, plaintiff's complaint objects to inaccurate "conclusions drawn by lay employees" that were based on *accurate* records. (Compl. ¶ 39.) Doe further acknowledges that DOJ included his psychologist's follow-up letters in his file and quoted them in the final termination letter (Pl.'s Opp'n at 16-18), so he cannot plausibly claim that his record is incomplete. Thus, plaintiff objects not to erroneous or incomplete records but to *misinterpretation* of the records by DOJ employees, for which there is no remedy under the Privacy Act. Because plaintiff has failed to show that there was an "error in the records," *Thompson*, 400 F. Supp. 2d at 19, he cannot succeed under (e)(5) or (e)(6).

### B. Lack of Rules and Safeguards – Subsections (e)(9) and (e)(10)

Plaintiff also fails to state a claim under 5 U.S.C. § 552a(e)(9) or (e)(10). To successfully state a claim under these subsections, plaintiff must identify a "rule or safeguard . . . that [DOJ] should have established but did not." *See Chambers*, 568 F.3d at 1007 n.7 (holding that plaintiff could not sue under (e)(9) or (e)(10) when merely alleging that the agency had failed to "safeguard and maintain records"). Section (e)(9) also requires that DOJ "instruct" persons involved in the maintenance of records "with respect to such rules and the requirements of this section." 5 U.S.C. § 552a (e)(9). Plaintiff alleges that DOJ's violations of the Privacy Act imply that its rules and safeguards are "illusory." (Pl.'s Opp'n at 20.) "This argument lacks merit. . . . [T]he DOJ has promulgated extensive regulations codified at 28 C.F.R. §§ 16.1 *et seq.* that safeguard its Privacy Act-protected records, notwithstanding the allegations of a single violation against one individual." *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d at 54-55. DOJ has issued numerous rules and regulations regarding the maintenance of records, and plaintiff has not identified any specific failure to issue guidelines. Furthermore, although plaintiff suggests that

DOJ violated (e)(9) by failing to formally train the Coordinator (Pl's Opp'n at 20), the Privacy

Act does not specify how the agency must "instruct" its personnel, and plaintiff has provided no

support for his suggestion that listing rules and requirements on the Internet is inappropriate.

Therefore, this claim will be dismissed.

### C. Lack of Informed Consent – Subsection (e)(3)

Subsection (e)(3) of the Privacy Act requires federal agencies maintaining systems of

records to "inform each individual whom it asks to supply information . . . [of] (B) the principal

purpose or purposes for which the information is intended to be used . . . ." 5 U.S.C. §

552a(e)(3). Plaintiff is entitled to civil remedies only if the violation had an "adverse effect" on

him. 5 U.S.C. § 552a(g)(1)(D). Thus, Doe "must establish that (1) [DOJ] failed to notify [him]

of the principal purpose of the investigation; (2) its actions had an adverse effect on [him]; and

(3) it willfully or intentionally violated this provision of the Act." *Cardamone v. Cohen*, 241

F.3d 520, 529 (6th Cir. 2001). Since "an agency may not know . . . precisely how it will use

information that is yet to be gathered," "subsection (e)(3) must be interpreted to permit flexibility

so the agency can determine the specific uses for information after it has been gathered."

*Thompson*, 400 F. Supp. 2d at 16 n.18. Here, plaintiff alleges that DOJ violated (e)(3) by

concealing its principal purpose in requesting the medical information: to "assess his security

clearance" and "not to ensure reasonable accommodation." (Compl. ¶ 38.) But plaintiff has not

adduced any facts that suggest that DOJ's "principal purpose" in requesting his information was

to assess his security clearance. Indeed, plaintiff states that the USAO "solicited from John Doe

medical information in order to provide reasonable accommodation." (Pl.'s Opp'n at 12.)

Though plaintiff alleges that "the actions of the [Coordinator] demonstrate" that this request was

a mere "pretext," (*Id.* at 11), the evidence he provides shows otherwise. The deposition of the

Accommodation Coordinator reveals that the Coordinator was "very concerned" (*id.,* Ex. 20 at

47) and "alarmed" (*id.*, Ex. 20 at 90) by the letter from plaintiff's doctor, and therefore "alerted

the appropriate officials." (*Id.*, Ex. 20 at 91.)  There is no hint of "pretext" here.  Further,

plaintiff ignores the fact that it was he who asked for the reasonable accommodation.

     Plaintiff has failed to provide any basis for a reasonable jury to infer that DOJ officials

"willfully or intentionally violated this provision of the Act" by concealing their true purpose.

"[P]roof of intent or willfulness is a necessary element of [plaintiff's] claims, and failure to

provide supporting evidence would lead to summary judgment in favor of the [government]."

*Sussman v. U.S. Marshal's Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007).  He primarily alleges

facts relating to DOJ's use of his information once it was collected, but fails to provide anything

beyond speculation for his claim that DOJ intentionally or willfully misled him into providing

his personal medical information.  Plaintiff's theory is "fanciful at best and without support"

(Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply") at 3 n.2), and is contradicted by the very facts he

provides.  He has not shown that DOJ failed to notify him of the principal purpose of its

investigation.  Summary judgment will therefore be granted on this claim.

     **D. Improper Disclosure – Subsection (b)**

     Counts I-IV of plaintiff's complaint allege that DOJ violated the Privacy Act by

improperly disclosing plaintiff's private medical information to various persons inside and

outside of the agency.  Privacy Act claims for monetary damages based on improper disclosure,

which arise under "catchall" subsection § 552a(g)(1)(D), have four elements: "1) the disclosed

information is a record contained within a system of records; 2) the agency improperly disclosed

the information; 3) the disclosure was willful or intentional; and 4) the disclosure adversely

affected the plaintiff."  *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 154 (D.D.C.

2004). "The burden of proof lies with the plaintiff." *Cacho*, 2006 WL 3422548, at *4 (citing *Reuber v. United States*, 829 F.2d 133, 141 (D.C. Cir. 1987)). Plaintiff alleges, and the defendants have not contested, that the disclosed information was a "record contained within a system of records." (Compl. ¶ 31.)

The defendants instead argue that disclosure was legally proper, under either the "need to know" (Defs.' Mot. at 8-10), or "routine use," (Defs.' Mot. at 15), exemptions to the Privacy Act's prohibitions on disclosure. "[T]he Privacy Act generally prohibits government agencies from disclosing personnel files" without the consent of the individual. *Bigelow v. Dep't of Defense*, 217 F.3d 875, 877 (D.C. Cir. 2000). However, an agency may properly disclose a protected record if one of a number of exemptions applies. 5 U.S.C. § 552a(b) (listing twelve exemptions). If plaintiff cannot establish that disclosure was improper, he cannot succeed under the Privacy Act as a matter of law.

### 1. Need to Know -- § 552a(b)(1)

Plaintiff alleges that information was improperly distributed to DOJ security personnel, the DOJ officials who supervised the Accommodation Coordinator, and EOUSA Attorney Rosenblum. DOJ responds that disclosure to these officers or employees was proper because they had "a need for the record in the performance of their duties." (Defs.' Mot. 8-10; 5 U.S.C. § 552a(b)(1).)

In a § 552a(b)(1) inquiry, "what must be determined . . . is whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly." *Bigelow*, 217 F.3d at 877 (describing this as the "point" of the exemption); *see also Gamble v. Dep't of the Army*, 567 F. Supp. 2d 150, 156 (D.D.C. 2008) (holding that the plaintiff's commanding officer in the Alaska National Guard had

a "legitimate reason to access plaintiff's disciplinary record" given the "debilitating effect" of misconduct in a military setting).[4]  This Court must determine "the need to know of the agency official who *received* the disclosure . . . ." *Cacho*, 2006 WL 3422548, at *5.[5]  Thus, whether the Accommodation Coordinator needed to know what security personnel thought of plaintiff's medical records is irrelevant.  (Pl.'s Opp'n at 6.)

Whether one agrees with defendants' decision to revoke plaintiff's security clearance, it cannot seriously be disputed that DOJ security personnel needed to know the contents of plaintiff's records.  The "need to know" exemption "permits the disclosure of [plaintiff's] protected record to a supervisor who needs information contained in the record to assess [plaintiff's] trustworthiness and make related personnel decisions." *Cacho*, 2006 WL 3422548, at *6.  *See also Bigelow*, 217 F.3d at 877 (holding that plaintiff's supervisor had a need to know plaintiff's information where his duties included "determining eligibility . . . [for] assignment or retention in sensitive duties").  All AUSAs must be eligible for a Level 4 security clearance.  (*See* Defs.' Reply, Attach. B ("All AUSA positions and Information Technology positions are designated Level 4.").)  Plaintiff was therefore required to maintain his eligibility for a security clearance in order to remain an AUSA, even if his work did not specifically require him to be cleared.  The security personnel informed of plaintiff's mental state needed to know the information he disclosed in order to assess his trustworthiness and "make related personnel

---

[4] Plaintiff wrongly conflates the "need to know" and "routine use" exemptions, suggesting that there must be "convergence" between the government's purpose in collecting and disclosing his information. (Pl.'s Opp'n at 11-13)  There is no such requirement under the "need to know" exemption. *See, e.g., Bigelow*, 217 F.3d at 877.

[5] For this reason, plaintiff's confusion over whether the Accommodation Coordinator or the AUSAs informed the EOUSA and security personnel about his medical records is immaterial.

decisions" about his eligibility for security clearance. Accordingly, disclosure to the security personnel was not improper.

Plaintiff's claims arising from the disclosure to the "Acting United States Attorney and to AUSAs in the office with no right or need to know" also cannot succeed as a matter of law. (Compl. ¶ 21; Pl.'s Counterstatement ¶¶ 6-7 (listing disclosure to "a Criminal Chief," and "the Acting United States Attorney").) As the "highest-ranking officers" in the office, with "supervisory and disciplinary authority over plaintiff," the Criminal Chief and Acting U.S. Attorney had a need to know the information disclosed about plaintiff. *See Cacho*, 2006 WL 3422548, at *6-7 (permitting disclosure of information related to the plaintiff's eligibility for his position to the highest-ranking officers in his office). *Accord Viotti v. U.S. Air Force*, 902 F. Supp. 1331, 1337 (D. Colo. 1995) (holding disclosure of information about acting head of political science department to "political science department staff" not improper "as a matter of law" under need to know exception). As plaintiff's supervisors, the officers were "responsible for ensuring that the [office] was operating safely" and therefore needed to know the information he provided. *See Cacho*, 2006 WL 3422548, at *6. The Accommodations Coordinator therefore properly disclosed plaintiff's information to them under the Privacy Act.

Plaintiff finally alleges his information was disclosed to "persons in the Executive Office for United States Attorneys" (i.e., EOUSA Attorney Rosenblum) who "had represented the USAO in various pending disciplinary matters against John Doe." (Compl. ¶ 21.) The need to know exemption is not limited "only to officers and employees within a certain office within an agency rather than to officers and employees of the entire agency." *Hanna v. Herman*, 121 F. Supp. 2d at 123-24 (finding that disclosure to an officer within another department of the plaintiff's agency "would be covered by the "need to know" exception as a matter of law.").

Rosenblum's position at the EOUSA, outside of the USAO, does not prevent him from having a need to know. *See id.*

Plaintiff alleges that further discovery will support "an assertion that [Rosenblum] has never before been involved in the reasonable accommodation process . . . implicating security clearance issues." (Compl. ¶ 21(d).) In other words, plaintiff argues, Rosenblum had no need to know because he was not involved in plaintiff's reasonable accommodation claim. Even so, Rosenblum would have been entitled to access the records because he represented DOJ in "various pending disciplinary matters" against plaintiff at the time. "[D]isclosure without plaintiff's consent" is permitted under the need to know exemption when "in the course of receiving, processing, investigating, or litigating . . . employment claims." *Ivey v. Snow*, No. 04-0214, 2005 WL 2474480, at *3 (D.D.C. Aug. 30, 2005) (citing *Pippinger v. Rubin*, 129 F.3d 519, 529-31 (10th Cir. 1997)). *See also Glass v. U.S. Dep't of Energy*, No. 87-2205, 1988 WL 118408, at *1 (D.D.C. Oct. 26, 1988) (holding that disclosure of records to "counsel for the agency . . . for defense of litigation initiated by plaintiff" was permitted under the need to know exemption). Rosenblum had a need to know plaintiff's records because he was litigating plaintiff's employment claims.[6] Thus, disclosure to Rosenblum was not improper under the Privacy Act, and summary judgment will be granted on this claim.

---

[6] Even taking as true plaintiff's unsupported allegations that Rosenblum had "crafted an excuse to rid DOJ of John Doe" (Pl.'s Opp'n at 2), the disclosure to Rosenblum would qualify under the need to know exemption. The Court determines the existence of a need to know objectively, based on the facts alleged; Rosenblum's subjective intent is therefore immaterial. *See, e.g.*, *Gamble*, 567 F. Supp. 2d at 156 (determining that army officer commanding plaintiff's National Guard unit had a need to know because he had a "legitimate reason to access plaintiff's . . . record."); *Ivey*, 2005 WL 2474480, at *3 (ending inquiry into whether IRS employees had a need to know plaintiff's records after determining the records were shared "in the course of . . . litigating employment claims.").

## 2. Routine Use

Defendants argue that plaintiff's claim against DOJ for disclosing the termination letters to the Unemployment Commission and Talkx must fail as a matter of law because of the "routine use" exemption. The Privacy Act allows disclosure of records "for a routine use as defined in subsection (a)(7) . . . and described under subsection (e)(4)(D) . . . ." Section 552a(a)(7) defines a "routine use" as use "for a purpose which is compatible with the purpose for which [the record] was collected." Section 552a(e)(4)(D) requires agencies to publish "each routine use of the records contained in the system, including the categories of users and the purposes of such use" in the Federal Register. Thus, merely publishing the routine use in the Federal Register will not satisfy the Privacy Act. The use must also be "compatible" with the purpose for which the record was collected. *See U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 9 F.3d 138, 144-46 (D.C. Cir. 1993); *Doe v. Stephens*, 851 F.2d 1457, 1466-67 (D.C. Cir. 1988) (holding that disclosing medical records pursuant to a grand jury subpoena was an invalid "routine use" because it would not be for a compatible purpose).[7]

DOJ cites to the Federal Register to establish both the "compatibility" and "publication" prongs of its "routine use" argument. (Defs.' Reply at 13-14.) DOJ's published routine uses include providing information to "a . . . State . . . income security administration agency (e.g., State unemployment compensation agencies), when necessary to adjudicate a claim . . . ." Publication of Notice of Systems of Records, 71 Fed. Reg. at 35344. This routine use applies to

---

[7] The precise definition of "compatibility" remains unclear in this Circuit. Judge Silberman, in a portion of his opinion in *U.S. Postal Service* that was not joined by Judge Williams, suggested that the "compatibility requirement" should be met by showing "some meaningful degree of convergence," or a "more concrete relationship or similarity . . . between the disclosing agency's purpose in gathering the information and in its disclosure." *See U.S. Postal Serv.*, 9 F.3d at 145 (quoting *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 548 (3rd Cir. 1989)). Ultimately, however, he found it "not necessary to decide today the precise limitations" of the compatibility requirement. *U.S. Postal Serv.*, 9 F.3d at 146.

"general personnel records files . . . reports of personnel actions, and the documentation required in connection with those actions." *Id.* at 35343. Defendant has therefore satisfied the publication requirement as applied to the disclosure to the Unemployment Commission.

DOJ's has similarly fulfilled the "publication" requirement for its disclosure to Talkx. Under the Privacy Act, the federal government may transfer information to third-parties, so long as doing so meets the definition of a routine use. *See Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 328 F.3d 176 (6th Cir. 2003) (holding that disclosure to third-party condominium board was a "routine use" under the Privacy Act). Among its routine uses, DOJ has listed: "[t]o disclose information to contractors, grantees, or volunteers performing or working on a contract, service, grant, cooperative agreement, or job for the Federal Government." 71 Fed. Reg. at 35346. The parties agree that Talkx is a "contractor" that acted as an "agent for the USAO, appealing the award of unemployment compensation." (Compl. ¶ 27e. *See also* Defs.' Mot. at 15.) DOJ has therefore satisfied the publication requirement.

The Court is satisfied that DOJ has established that its purpose in disclosing Doe's information was compatible with its purpose in collecting it. DOJ's listed purpose for collecting supplemental medical information is to "clearly explain the nature of the disability or the need for the reasonable accommodation, or . . . otherwise clarify how the requested accommodation will assist the employee . . . ." (Manual and Procedures for Providing Reasonable Accommodation, Defs.' Mot., Attach. 3 at 5.) DOJ's listed purpose for disclosing information to the Unemployment Commission and Talkx is "determining status, eligibility, and employee's rights and benefits under pertinent laws and regulations governing Federal employment." 71 Fed. Reg. at 35343. Thus, plaintiff's records were both collected and disclosed in order to determine the rights and benefits to which he was entitled under "pertinent" laws. DOJ collected

plaintiff's medical information to determine his legal eligibility for rights and benefits. By filing

for unemployment benefits, plaintiff raised the issue of his "eligibility, . . . rights and benefits"

before the Unemployment Commission. In its appeal of the Commission's decision, DOJ

disclosed plaintiff's medical information – first to Talkx, then to the Commission – as part of its

claim that he had been fired for "just cause." (*See* Pl.'s Opp'n at 21-22.) In other words, DOJ

disclosed plaintiff's records to determine his eligibility for unemployment benefits. The Court

finds this purpose sufficiently compatible with DOJ's purpose in collecting the records and, thus,

that defendant has satisfied the "compatibility" requirement.

Plaintiff does not appear to contest that DOJ's use of the records was routine. (Pl.'s

Opp'n at 21-22.) Rather, he argues that DOJ had "no basis to appeal" and "had no ground to

challenge" his unemployment benefits. (*Id.*) Plaintiff does not explain why the adequacy of

DOJ's grounds for appeal should be dispositive regarding the issue of "routine use," only that

"[i]t is important to understand the true facts." (*Id.* at 21.) Nor does he provide any legal

authority to support his argument that DOJ's subjective intent in pursuing the appeal is relevant.

Plaintiff further undermines his own argument by acknowledging that "an appeal is an

affirmative act the employer may chose to take or not take." (*Id.*) Plaintiff may have had a good

case before the Unemployment Commission, but DOJ still retained the option of appealing.

Thus, the relative strength or weakness of DOJ's appeal is not relevant.

Defendants have shown disclosure of plaintiff's records to the Unemployment

Commission and Talkx to be a proper "routine use," and summary judgment will therefore be

granted on this claim.

### 3. Adverse Effect

Even if DOJ's disclosure to the Unemployment Commission and Talkx did not qualify as a "routine use," plaintiff's claim would still fail because he has not established that he suffered an "adverse effect" as a result of this disclosure. "Plaintiff is entitled to civil remedies under § 552a(b) only if the violation had an 'adverse effect' on him." *Gamble*, 567 F. Supp. 2d at 155. The plaintiff must allege "actual damages *connected to* the adverse effect to "qualify" under the Act. *Doe v. Chao*, 540 U.S. 614, 620-27 (2004); *Mandel v. U.S. Office of Pers. Mgmt.*, 244 F. Supp. 2d 146, 153 (E.D.N.Y. 2003) (holding that plaintiff must establish a "causal connection" between agency violation and adverse effect). Thus, plaintiff "must establish not only that he was 'adversely affected' by the improper disclosure, *but also* that he suffered 'some harm for which damages can reasonably be assessed.'" *Mulhern v. Gates*, 525 F. Supp. 2d 174, 181-82 (D.D.C. 2007) (quoting *Doe v. Chao*, 540 U.S. at 621).

Plaintiff claims that he suffered "damage to career and his professional reputation and out-of-pocket pecuniary loss" as a result of the disclosure to the Unemployment Commission and Talkx. (Compl. ¶ 43.) But neither disclosure caused plaintiff's termination and, despite the disclosure, plaintiff prevailed in his unemployment compensation case. Mere "self-serving, unsupported statement[s]," consisting of "a few conclusory sentences," are "insufficient to defeat a motion for summary judgment." *Mulhern*, 525 F. Supp. 2d at 186. For instance, plaintiff provides no support for his assertion that the disclosure *to the Unemployment Commission* "would pose an obstacle to [his] re-employment." (Pl.'s Counterstatement ¶ 11j.) Nor has he provided evidence that the information released to the Commission or Talkx is available to the public. Indeed, the document rejecting DOJ's appeal does not disclose any information covered by the Privacy Act. (Pl.'s Opp'n, Ex. 18.) Plaintiff has also not alleged that he suffered damages

from the appeal itself. As he notes, the Commission rejected DOJ's appeal almost immediately.
(Pl.'s Counterstatement ¶ 11g.) Thus, plaintiff has provided nothing but "self-serving,
unsupported statements" as proof that DOJ's appeal of his unemployment compensation award
caused him pecuniary damage.

Plaintiff also claims that DOJ's disclosure caused "direct and indirect injury to
[p]laintiff's reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset,
physical pain and physical suffering . . . ." (Compl. ¶ 43.) "To defeat a motion for summary
judgment, a plaintiff must offer evidence sufficient for a jury to find that the emotional harm he
claims to have suffered was acute, tangible, and severe enough to give rise to actual damages."
*Mulhern*, 525 F. Supp. 2d at 186. A "speculative claim of emotional distress allegedly caused by
others talking about [plaintiff]" is not actionable under the Privacy Act, for "while gossip may
cause an adverse effect, it does not constitute actual damages." *See Gamble*, 567 F. Supp. 2d at
156 (citing *Doe v. Chao*, 540 U.S. at 620-25) ("emotional anguish alone is insufficient, and . . . a
plaintiff must show actual damages to recover under the Privacy Act.").[8] Here, plaintiff "fails to
make any showing that these damages were caused by his knowledge that the DOJ" disclosed his
medical information to the Unemployment Commission and Talkx, "as opposed to any other
possible influences." *Krieger v. U.S. Dep't of Justice*, 562 F. Supp. 2d 14, 18 (D.D.C. 2008).

---

[8] Although "the recent trend at the District Court level has been to allow Privacy Act suits
seeking general compensatory damages, such as pain and suffering and non-pecuniary losses, to
proceed," *Montemayor v. Fed. Bureau of Prisons*, No. 02-1283, 2005 U.S. Dist. LEXIS 18039,
at *15 (D.D.C. Aug. 25, 2005), "[e]ven in those courts holding that non-pecuniary emotional
distress could qualify as actual damages, a level of severity beyond that which plaintiffs have
shown here has been required." *Rice v. United States*, 245 F.R.D. 3, 7 (D.D.C. 2007) (citing
*Boyd v. Snow*, 335 F. Supp. 2d 28, 39 (D.D.C. 2004) (declining summary judgment where
plaintiff alleged "severe emotional and physical harm, stress, sleeplessness and nightmares")).
*Cf. Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d at 53 (holding plaintiff had stated a claim
for relief where he alleged "'great mental anguish and anxiety, producing physical symptoms'
based on Defendants' conduct.").

Thus, because plaintiff has failed to show he has suffered actual damages caused by the disclosure to the Unemployment Commission and Talkx, plaintiff's claim to relief under the Privacy Act must be rejected.

## III. PRIVACY ACT CLAIMS AGAINST THE MSPB

Plaintiff fails to state a claim against the MSPB under the Privacy Act. A plaintiff "may not collaterally attack prior decisions of the MSPB by seeking amendment of Board decisions through use of the Privacy Act." *Jones v. U.S. Merit Sys. Prot. Bd.*, No. 8:05CV80, 2005 WL 2445899, at *3 (D. Neb. Oct. 3, 2005), *aff'd*, 216 F. App'x 608 (8th Cir. 2007). *Accord Byrnes v. Merit Sys. Prot. Bd.*, No. 04-742, 2005 WL 486156, at *2 (D.D.C. Mar. 2, 2005) (holding that the Privacy Act "cannot be used as a vehicle to 'correct' a substantive decision that went against an individual's interest"). Unlike the plaintiffs in *Jones* and *Byrnes*, plaintiff does not ask the Court to amend his record; instead he seeks damages resulting from the Board's initial refusal to exercise its discretion to grant him Doe status.[9] (Compl. at 22 ¶ (a) (prayer for relief).) Nevertheless, plaintiff attempts to achieve the same forbidden objective as the plaintiffs in *Jones* and *Byrnes*: relitigating issues already decided by the ALJ. Plaintiff collaterally attacks the MSPB's decision not to redact his information and reargues at length the merits of the ALJ's ruling. (Pl.'s Opp'n at 22-26.) His claim for damages against the MSPB invites the Court to

---

[9] Because plaintiff claims that he has suffered damages from the disclosure of his confidential medical records, the MSPB's decision to allow him to proceed under a pseudonym does not moot his claims. The Supreme Court has held that "it must be plain that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" for a claim to be moot. *Doe v. Harris*, 696 F.2d 109, 111 (D.C. Cir. 1982) (quoting *County of Los Angeles v. Davis*, 440 U.S. 621, 625 (1979)). Plaintiff "asserts injury stemming from the undisputed fact that his files were sought and released; this injury, he contends, has not been wholly eradicated and warrants redress." *Doe v. Harris*, 696 F.2d at 113-14. To the extent plaintiff sustained damages from the disclosure by the MSPB, his claims are not moot, although his claim for injunctive relief has been mooted by the MSPB's decision.

penalize the Board for exercising its administrative discretion.  The Privacy Act does not extend

this far (nor is it clear that this Court has any jurisdiction over a decision by the ALJ).[10]

Even if plaintiff could bring his claim against the MSPB under the Privacy Act, he would

be unable to succeed.  A Privacy Act claim for monetary damages based on improper disclosure

– which arises under the "catchall" category codified at § 552a(g)(1)(D) – has four elements:

"the disclosed information is a record contained within a system of records; 2) the agency

improperly disclosed the information; 3) the disclosure was willful or intentional; and 4) the

disclosure adversely affected the plaintiff."  *Logan*, 357 F. Supp. 2d at 154 (citing 5 U.S.C. §

552a(g)(1)(D)).  To satisfy the "willful or intentional" requirement, "[t]he violation must be so

patently egregious and unlawful that anyone undertaking the conduct should have known it

unlawful."  *Sussman*, 494 F.3d at 1122 (quoting *Deters*, 85 F.3d at 660).

Plaintiff cannot provide any facts to support a plausible inference that the ALJ's refusal

to grant Doe status or that the public release of the MSPB decision was "patently egregious" or

"unlawful."  "[P]roof of intent or willfulness is a necessary element of [plaintiff's] claims, and

failure to provide supporting evidence would lead to summary judgment in favor of the

[government]."  *Id.* at 1122.  In *Doe v. U.S. Dep't of Labor*, the case plaintiff primarily relies

upon to support his claim against the MSPB, the Court dismissed plaintiff's claims for damages

against the government for publishing his medical information in an administrative decision,

---

[10] *Doe v. Dep't of Labor*, which examined a decision by the Employee Compensation Appeals
Board not to redact the plaintiff's medical records, is distinguishable.  *See* 451 F. Supp. 2d 156,
171-76 (D.D.C. 2006), *vacated by settlement*, 2007 U.S. Dist. LEXIS 36605 (D.D.C. 2007).  The
Department of Labor "apparently conced[ed]" that the records were disclosed under the meaning
of the Privacy Act and defended the disclosure as a "routine use."  *Id.* at 171-72.  Thus, the court
evaluated the ECAB's decision as an affirmative act of disclosure rather than an administrative
judgment.  *Compare id. with Jones*, 2005 WL 2445899, at *3 (distinguishing between the
"collection, maintenance, use and dissemination of personal information" at issue under the
Privacy Act and the MSPB's role in "adjudicat[ing] disagreements and pronounc[ing] decisions
after inquiry and deliberation").

because the plaintiff had failed to show disclosure was willful or intentional. 451 F. Supp. 2d at

176-80. Here, as in *Department of Labor*, plaintiff has failed to show that defendant MSPB

"should have known that failing to redact the plaintiff's name from his . . . decision was a Privacy

Act violation." *Id.* at 179-80. Indeed, defendants argue that the MSPB had a legal obligation to

do so under the Freedom of Information Act ("FOIA"). (Defs.' Mot at 17-21 (citing 5 U.S.C. §

552(a)(2)).) Whether the Board was obligated to release plaintiff's information (and the FOIA

exemption for "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), suggests

that it was not), plaintiff has not established that MSPB's action were "patently egregious and

unlawful." Plaintiff cannot show that disclosure was willful or intentional, and thus, defendants'

motion to dismiss, or in the alternative for summary judgment is granted.[11]

## IV. REHABILITATION ACT CLAIMS

Plaintiff has asked the Court to stay or dismiss his Rehabilitation Act claim because the

MSPB has "modified the Board's previous decision" and will "consider [his] claims of disability

discrimination and retaliation." (Pl.'s Opp'n at 26.) Although the Federal Circuit has "exclusive

jurisdiction" over appeals from MSPB orders or decisions, the district courts have jurisdiction in

"[c]ases of discrimination." *Downey v. Runyon*, 160 F.3d 139, 143 (2d Cir. 1998). District

courts also have jurisdiction over appeals in mixed cases, which involve "adverse personnel

action[s] subject to appeal to the MSPB coupled with . . . claim[s] that the action was motivated

---

[11] Although Count V of plaintiff's complaint alleges that both DOJ and the MSPB violated
the Privacy Act by disclosing his medical information in the MSPB decision (Compl. ¶ 53),
he alleges no facts in his complaint and makes no argument in his brief to support his claim
against DOJ. Because the MSPB was responsible for the disclosure and plaintiff has failed to
provide any support for his claim that the DOJ caused the disclosure, he cannot show that
"[DOJ] improperly disclosed the information," *Logan*, 357 F. Supp. 2d at 154, and cannot
succeed against DOJ under the Privacy Act as a matter of law.

by discrimination." *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999). Plaintiff's claim alleges

both "disability discrimination and retaliation" and therefore appears to be a mixed case under

the Rehabilitation Act. (*See* Pl.'s Opp'n at 26.)

An employee "adversely affected or aggrieved by a *final* order or decision of the Merit

Systems Protection Board may obtain judicial review." 5 U.S.C. § 7703(a)(1) (emphasis added).

By limiting "judicial review to employees 'aggrieved by the final disposition' of their

administrative 'complaint,'" the statute "thereby mandat[es] administrative exhaustion." *Spinelli*

*v. Gross*, 446 F.3d 159, 162 (D.C. Cir. 2006) (internal citations omitted). This requirement is no

"mere technicality," for it "serves the important purposes of giving the charged party notice of

the claim and 'narrow[ing] the issues for prompt adjudication and decision.'" *Alexander v.*

*Tomlinson*, 507 F. Supp. 2d 2, 20 (D.D.C. 2007) (quoting *Park v. Howard Univ.*, 71 F.3d 904,

907 (D.C. Cir. 1995)). Plaintiff is therefore entitled to review "when the MSPB issues an

adverse 'final decision' or 'final order' concerning" his case.[12] When "the Board grants a

petition for review or a cross petition for review, or reopens or dismisses a case, the decision of

the Board is final if it disposes of the entire action." 5 C.F.R. § 1201.113. As plaintiff himself

notes, the MSPB is currently reviewing his case (Pl.'s Opp'n at 26) and has not disposed of the

entire action. Therefore, there is no final decision for this Court to review. The Court lacks

jurisdiction over the claim and will dismiss it without prejudice. *See Howard v. Gutierrez*, 474

---

[12] A plaintiff is also entitled to file for relief under the Rehabilitation Act where the MSPB has taken no judicially reviewable action and 120 days have passed since he filed his appeal. *Evono v. Reno*, 216 F.3d 1105, 1109 (D.C. Cir. 2000); *Downey*, 160 F.3d at 145 & n.6 (citing 5 U.S.C. § 7702(e)(1)). Plaintiff appealed his removal to the MSPB on February 11, 2009. (Compl. ¶ 27a.) Plaintiff filed his claim under the Rehabilitation Act as part of his Second Amended Complaint on May 19, 2009. (Dkt. 23.) Because 120 days had not elapsed between the day plaintiff filed his MSPB appeal and the day he filed his Rehabilitation Act claims, this Court may not assert jurisdiction under this provision.

F. Supp. 2d 41, 51 (D.D.C. 2007) ("[I]f [plaintiff] had pled the Rehabilitation Act claim in her initial complaint, it would have . . . been dismissed without prejudice for failure to exhaust.").[13]

## V. APA CLAIMS

The Court will grant defendants' motion to dismiss plaintiff's claim under the APA. "The APA does not provide an independent basis for subject matter jurisdiction." *West v. Jackson*, 538 F. Supp. 2d 12, 21 (D.D.C. 2008) (citing *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456-58 (1999) (noting that the Court has "long held" the judicial review provision of the APA is not an independent grant of jurisdiction)). Rather, the APA provides that final agency action is subject to judicial review where there is no other adequate remedy. 5 U.S.C. § 704. Under the Rehabilitation Act, plaintiff has a right to bring an action before the MSPB for defendant's failure to make a "final determination of a reasonable accommodation." (Compl. ¶ 63.) This is "adequate to redress discrimination" and so "precludes a remedy under the APA." *West*, 538 F. Supp. 2d at 21. *Cf. Radack*, 402 F. Supp. 2d at 104 (no comparable adequate remedy under the Privacy Act for agency's disclosure of records in violation of its own internal policies). Because the Rehabilitation Act provides an adequate remedy, plaintiff may not, as a matter of law, sue under the APA.

## VI. RULE 56(F) AFFIDAVIT

Summary judgment should be entered "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, under Federal Rule of Civil Procedure 56(f), "a court may deny a motion for summary judgment or order a continuance if the party opposing the motion 'shows by affidavit that, for specified reasons, it cannot present facts essential to justify

---

[13] Because the Court has dismissed plaintiff's Rehabilitation Act claim, it is unnecessary for it to consider defendants' request to dismiss or transfer the claim for improper venue. (Defs.' Mot. at 31-33.)

its opposition.'" *Citizens for Responsibility & Ethics in Wash. v. Leavitt*, 577 F. Supp. 2d 427, 433-34 (D.D.C. 2008) (quoting Fed. R. Civ. P. 56(f)). "In this regard, the opponent of summary judgment must provide the 'requisite specificity' to justify his request for discovery." *Brookens v. Solis*, 616 F. Supp. 2d 81, 96 (D.D.C. 2009).

Plaintiff's affidavit does not comply with the requirements of Rule 56(f) and cannot justify a continuance. He has not "stated concretely why [he] could not, absent discovery, present by affidavit facts essential to justify [his] opposition" to summary judgment and has omitted "specific reasons demonstrating the necessity and utility of discovery to fend off summary judgment." *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989). Plaintiff has already conducted extensive discovery. He has deposed key USAO personnel at length, including the Accommodation Coordinator, the Criminal Chief, the U.S. Attorney, and the EOUSA head of security. (Pl.'s Opp'n, Exs. 19-22.) There are numerous documents obtained from the government in the record. (*See generally* Defs.' Mot. Exs. 1-3; Pl.'s Opp'n, Exs. 1, 3, 5, 12, 15, 18.) Plaintiff's ability to question his "key" witnesses at length and the extensive administrative record he submits suggest that summary judgment is not premature. *See Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1046-47 (D.C. Cir. 2008) (holding district court abused discretion in granting summary judgment where plaintiff lacked "key . . . testimony" and had only a "limited record" of administrative proceedings).

Plaintiff's affidavit merely lists facts which he plans to discover, with no authority or explanation for why they are relevant to his claims. The Court does not need to evaluate whether DOJ employees subjectively believed security personnel had a need to know plaintiff's medical records (Pl.'s Rule 56(f) Aff. ¶ 3), because the intent of the disclosing party does not affect the "need to know" analysis. *See supra* Part II.D.1. Similarly, Rosenblum's "actions and motives,"

(Pl.'s Rule 56(f) Aff. ¶ 7), do not affect the legitimacy of DOJ's disclosures under the "need to know" or "routine use" exemptions.  Nor would "discovery of the persons involved in" the appeal to the Unemployment Commission or "how or why" the information was provided produce relevant information.  (*Id.* ¶ 6.)  Plaintiff cites no law to support his request for discovery of DOJ's decision-making process prior to a routine use.  Indeed, the "routine use" exemption requires only that the use be published and compatible with the purpose for which the information was collected, making DOJ's process irrelevant.

Finally, plaintiff has not demonstrated the necessity or utility of discovering "all of the persons or entities to whom his medical information was disclosed."  (Pl.'s Rule 56(f) Aff. ¶ 5.)  First, plaintiff has not "specifically explain[ed] what [his] proposed discovery would likely reveal and why that revelation would advance the plaintiffs' case."  *Graham v. Mukasey*, 608 F. Supp. 2d 50, 54 (D.D.C. 2009).  "A Rule 56(f) motion for additional discovery is not designed to allow 'fishing expeditions.'"  *Id.*  Even if he had provided the necessary details, plaintiff would be unable to show that disclosure to these unknown persons caused an "adverse effect" under the "catchall" provision of the Privacy Act.  5 U.S.C. § 552a(g)(1)(D).  Where plaintiff learns of a disclosure "only after initiating the present action . . . plaintiff cannot prove that he suffered emotional harm" as a result, "as a matter of law."  *Cacho*, 2006 WL 3422548, at *8.  Thus, plaintiff would not be able to recover damages for any disclosures of which he is currently unaware.  Finally, even if he could prove that suffered harm as a result, it would be difficult to imagine how disclosures to these unknown persons or entities would be "patently egregious or unlawful" under the Privacy Act, *Sussman*, 494 F.3d at 1122, given that all of the other alleged disclosures were proper either under the "need to know" or "routine use" exemptions.

Although summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery,'" here there is no reason to believe "the information plaintiff seeks through discovery is . . . necessary to decide this case." *Citizens for Responsibility & Ethics in Wash.*, 577 F. Supp. 2d at 434 (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). "Thus discovery is not likely to reveal any triable issue of fact." *Id.* The Court will therefore deny the plaintiff's motion for Rule 56(f) discovery.

**CONCLUSION**

For the foregoing reasons, the Court will grant the defendants' motion to dismiss, or in the alternative, for summary judgment and will dismiss with prejudice all of plaintiff's claims, except his claim under the Rehabilitation Act, which will be dismissed without prejudice. An Order consistent with this Memorandum Opinion is also being issued this date.

        /s/

ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 6, 2009

-30-